## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MARIA ALICIA SUMMERS,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§<br>§ | Civil Action No. |
| | §<br>§ | |
| ORIX USA, LP; ORIX CORPORATION<br>USA; plus, any entity that at any time<br>from December 1, 2017 to December 31,<br>2019 operated a business at 1717 Main<br>Street #1100, Dallas, Texas 75201,<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## COMPLAINT

Plaintiff Maria Alicia Summers ("Summers") brings this action against ORIX USA, LP and ORIX Corporation USA (collectively hereinafter "ORIX") -- and, if applicable, any other entity/entities as referenced above -- for violating federal law.

### Nature of the Case

1.      This is an employment case. It involves claims of unlawful discrimination – this includes but is not limited to sexual harassment by a supervisor -- and unlawful retaliation.

2.      This case involves three adverse employment actions – sexual harassment, failure to promote, and discharge (which includes an offer of a severance package that was smaller than those previously offered to other similarly-situated individuals).

3.      In Count One, Summers alleges discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) – specifically, sexual harassment by a supervisor, which created, for Summers, a hostile work environment.

**Complaint**                                                                                    **Page 1**

4.    In Count Two, Summers alleges discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) – specifically, failure to promote her in Year 2019, where a motivating factor in the decision to pass over her was her gender (female).

5.    In Count Three, Summers alleges discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) – specifically, failure to promote her in Year 2019, where a motivating factor in the decision to pass over her was the fact that she is Hispanic.

6.    In Count Four, Summers alleges discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") – specifically, failure to promote her in Year 2019, where a motivating factor in the decision to pass over her was the fact that she is Hispanic.

7.    In Count Five, Summers alleges retaliation in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) – specifically, failure to promote her in Year 2019, where the decision to pass over her for promotion was "because" Summers had previously conveyed to at least two management officials her opposition to what she reasonably believed was unlawful sexual harassment.

8.    In Count Six, Summers alleges discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) – specifically, a discharge that took effect on December 31, 2019, where a motivating factor in the discharge decision was her gender (female).

9.    In Count Seven, Summers alleges discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) – specifically, a discharge that took effect on December 31, 2019, where a motivating factor in the discharge decision was the fact that she is Hispanic.

10.    In Count Eight, Summers alleges discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") – specifically, a discharge that took effect on December 31, 2019, where a motivating factor in the discharge decision was the fact that she is Hispanic.

11.     In Count Nine, Summers alleges retaliation in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) – specifically, a discharge that took effect on December 31, 2019, where the discharge decision was "because" of the fact (i) that Summers had previously conveyed to at least two different management officials her opposition to what she reasonably perceived was unlawful sexual harassment, and (ii) that Summers had previously filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission.

12.     In Count Ten, Summers alleges retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") – specifically, a discharge that took effect on December 31, 2019, where the discharge decision was because of the fact, at least in part, (i) that Summers had previously conveyed to at least two different management officials her opposition to what she reasonably perceived was unlawful sexual harassment, and (ii) that Summers had previously filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission.

### Parties

13.     Alicia Maria Summers ("Summers") is an individual.

    A.     Summers is female.

    B.     Summers is Hispanic.

    C.     Summers currently resides in Collin County, Texas.

    D.     Summers has resided in Collin County, Texas at all times from December 1, 2017 to the filing of this pleading.

14.     Defendant ORIX USA, LP is –

    A.     an entity that was identified as Summers's employer on a "Form W-2 Wage and Tax Statement" for Year 2017.

    B.     an entity that was identified as Summers's employer on a "Form W-2 Wage

and Tax Statement" for Year 2018.

   C. an entity that was identified as Summers's employer on a "Form W-2 Wage and Tax Statement" for Year 2019.

   D. an entity that has preserved and maintained all records on Summers described in 29 C.F.R. § 516.3.

   E. an entity that, in Year 2020, was identified by the Texas Workforce Commission ("TWC") as Summers's former employer when she applied for unemployment benefits.

   F. an entity that, according to the Texas Secretary of State, may be served with process by serving its **registered agent**, who, according to the Texas Secretary of State as of Friday, September 18, 2020, is Mr. Ron K. Barger, located at 1717 Main Street, Suite 1100, Dallas, Texas 75201, or wherever else he may be found.

  15. Defendant ORIX Corporation USA is --

   A. an entity that was formed in Delaware.

   B. an entity that is currently in good standing.

   C. an entity through which Summers participated in a 401(k) plan.

   D. an entity that Summers has named in two charges of discrimination that she has caused to be filed with the U.S. Equal Employment Opportunity Commission.

     (i) With regard to the first charge, see Paragraph 86 *infra.*

     (ii) With regard to the second charge, see Paragraph 104 *infra.*

   E. an entity that was identified in the four corners of a writing given to Summers on December 17, 2019 as set forth in Paragraph 97 *infra.*

   F. an entity that has preserved and maintained all records on Summers

**Complaint**                      **Page 4**

described in 29 C.F.R. § 516.3.

G.    an entity that that may be served with process by serving its **registered agent**, Capitol Corporate Services, Inc., located at 206 East 9th Street, Suite 1300, Austin, Texas 78701, or wherever else that registered agent may be found.

16.    Although superficially distinct, ORIX USA, LP and ORIX Corporation USA constitute a "single integrated enterprise" given their interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.

17.    Pleading in the alternative, ORIX USA, LP and ORIX Corporation USA constitute "joint employers" for purposes of the "hybrid economic realities/common law control test."

18.    ORIX USA, LP and ORIX Corporation USA shall hereinafter be referenced collectively as "ORIX."

### Jurisdiction

19.    This Court has original, subject matter jurisdiction over this action because Summers's claims present federal questions. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1343(a)(4) ("civil rights").

20.    This Court has *in personam* jurisdiction, both specific and general, over ORIX because ORIX conducts business in Texas, Summers's claims arose in Texas, and ORIX is amenable to service by this Court.

### Venue

21.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Summers's claims occurred here. *See* 28 U.S.C. § 1391(b)(2).

### Material Facts

22.    ORIX is in the business of providing financial solutions in the form of capital across

multiple industry sectors.

23.    ORIX was Summers's "employer," as that term is defined in 42 U.S.C. § 2000e(b), starting on the first day when it put Summers on its payroll, and ending on the last day of Summers's employment there.

(i)    ORIX had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2018.

(ii)    ORIX had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2019.

24.    In Year 2017, no female at ORIX held the position of Managing Director in any investment business unit.

25.    In Year 2018, no female at ORIX held the position of Managing Director in any investment business unit.

26.    In Year 2019, no female at ORIX held the position of Managing Director in any investment business unit.

27.    At all times from December 1, 2017 through December 31, 2019, ORIX conducted business at the following location -- 1717 Main Street, #1100, Dallas, Texas 75201 (hereinafter "Dallas Office").

28.    From Year 2015 through Year 2019, ORIX's fiscal year started on April 1, and it ended on the following March 31.

29.    From Year 2015 through Year 2019, ORIX had a practice of naming newly promoted individuals in March and/or April.

30.    ORIX hired Summers effective July 2015.

31.    ORIX hired Summers effective July 1, 2015.

32.    ORIX assigned Summers to the Dallas Office –

    A.    effective July 2015.

    B.    effective July 1, 2015.

    C.    throughout all of calendar year 2017

    D.    throughout all of calendar year 2018.

    E.    throughout all of calendar year 2019.

33.    ORIX assigned Summers the following job title -- Director of ORIX Energy Capital ("OEC").

34.    ORIX assigned Summers the following job title -- Director of ORIX Energy Capital ("OEC") –

    A.    effective July 2015.

    B.    effective July 1, 2015.

    C.    throughout all of calendar year 2017

    D.    throughout all of calendar year 2018.

    E.    throughout all of calendar year 2019.

35.    On or about March 17, 2017, Summers was nominated to the Board of the "ORIX Foundation."

36.    On or about March 17, 2017, Summers was named to the Board of the ORIX Foundation.

37.    In the spring of 2017, Summers was nominated to the "ORIX Values Ambassador Group."

38.    In the spring of 2017, Summers was selected as a member of the ORIX Values Ambassador Group's Steering Committee.

**Complaint**                                                                                              **Page 7**

39.     On June 13, 2017, employees from outside OEC nominated Summers to an internal Managerial Training Workshop held off-site.

40.     In Year 2017, Summers successfully amended the credit facility of an oil field services company in the energy portfolio of OEC that was in default.

41.     In Year 2017, Summers was invited to attend OWL ORIX Women in Leadership.

42.     In April 2017, Summers received an increase in her base salary.

43.     In April 2017, Summers received a larger annual bonus than what she had received in Year 2016.

44.     ORIX did not promote Summers at any time in Year 2017.

45.     ORIX did not promote Summers to the position of Managing Director at any time in Year 2017.

46.     In the spring of 2018, Summers was selected to be a member of the OWL Steering Committee.

47.     In the spring of 2018, Summers was selected to be a member of the OWL Steering Committee by the following individuals –

      A.     ORIX's Head of Human Resources.

      B.     ORIX's Deputy Chief Financial Officer.

      C.     ORIX's Chief Accounting Officer.

48.     In the spring of 2018, Summers successfully amended the credit agreement of a struggling upstream company that was in default.

49.     In Year 2018, Summers successfully prevented ORIX from closing on an upstream opportunity involving a company that she deemed to be a bad investment.

      A.     This same upstream company failed one year later.

B.     This same upstream company failed one year later, and participating lenders lost significant dollars.

50.     In September 2018, Summers successfully marketed and sold ORIX's mineral and royalty position in Oklahoma.

A.     This transaction resulted in a better than expected return of capital to ORIX.

51.     In April 2018, Summers received an increase in her base salary.

52.     In April 2018, Summers received a larger annual bonus than what she had received in Year 2017.

53.     ORIX did not promote Summers at any time in Year 2018.

54.     ORIX did not promote Summers to the position of Managing Director at any time in Year 2018.

55.     In July 2019, ORIX, by and through Ms. Mary Beth Dudley and Mr. Paul Wilson, provided Summers with an incentive/grant notice.

56.     In July 2019, ORIX increased Summers's base salary.

A.     This pay raise was retroactive to April 2019.

57.     In January 2019, Summers successfully negotiated an exit of one of OEC's oil field services credits.

58.     In April 2019, Summers received a larger annual bonus than what she had received in Year 2018.

59.     ORIX did not promote Summers at any time in Year 2019.

60.     ORIX did not promote Summers to the position of Managing Director at any time in Year 2019.

61.     Summers was an "employee" of ORIX, as that term is defined in 42 U.S.C. §

**Complaint**                                                                                                     **Page 9**

2000e(f), starting from her date of hire there, and ending on her last day of employment there.

62.    ORIX had an individual named Mr. Mark Tharp assigned to the Dallas Office –

    A.    throughout all of calendar year 2018.

    B.    without interruption from January 1, 2019 to April 1, 2019.

63.    ORIX had assigned to Tharp the job title of Managing Director, ORIX Energy Capital --

    A.    throughout all of calendar year 2018.

    B.    without interruption from January 1, 2019 to April 1, 2019.

64.    Summers reported directly to Tharp at all times from April 1, 2018 through April 1, 2019,

65.    Tharp reported directly to Mr. John Lenocker at all times from April 1, 2018 through April 1, 2019.

    A.    Lenocker's title during this time was Managing Director Private Debt & Equity Capital.

66.    Lenocker reported directly to Wilson at all times from April 1, 2018 through April 1, 2019.

    A.    Wilson's title during this time was Chief Financial Officer.

67.    At all times from April 1, 2017 to April 1, 2019, ORIX empowered Tharp to effect a significant change in Summers's employment status, *e.g.*, promoting her (or not), reassigning her with significantly different responsibilities (or not), or causing a significant change in her benefits (or not).

68.    During Summers's employment with ORIX, Tharp engaged in unwelcome, sexually charged conduct towards Summers. Examples of such conduct by Tharp include the

**Complaint**                                                                 **Page 10**

following:

        A.      Tharp showed Summers a text message on the cell phone that ORIX had previously issued to him. The text came from a certain Mr. Ted Thorp.

        (i)      At this time, Thorp was a Managing Director at another business unit at ORIX.

        (ii)      The text from Thorp included a photo of a woman scantily dressed in black lingerie with a leg propped up on a bathroom sink.

        (iii)      While showing this photo to Summers, Tharp told Summers that the woman in the photo was Thorp's "latest conquest."

        (iv)      It was during Year 2018 when Tharp showed Summers this text from Thorp.

        (v)      It was during the second half of Year 2018 when Tharp showed Summers this text from Thorp.

        (vi)      It was between the hours of nine a.m. and five p.m. when Tharp showed Summers this text from Thorp.

        (vii)      It was at the Dallas Office where Tharp showed Summers this text from Thorp.

        (viii)      It was in Tharp's office, located at the Dallas Office, where Tharp showed Summers this text from Thorp.

        (ix)      Summers found Tharp's conduct described in this subparagraph A to be unwelcome.

        (x)      A reasonable person would find Tharp's conduct described in this subparagraph A to be unwelcome.

**Complaint**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 11**

B.  Tharp showed Summers a photo of his ex-wife. In the photo, Tharp's ex-wife is topless. Specifically, in the photo Tharp's ex-wife is exposing her breasts which had recently been surgically enhanced/augmented. While showing this photo to Summers, Tharp told Summers he had paid for the surgical procedure. Tharp then asked Summers for her thoughts.

(i)  The events described in this subparagraph B took place during the first quarter of Year 2019.

(ii)  The events described in this subparagraph B took place in February 2019.

(iii)  The events described in this subparagraph B took place at the Dallas Office.

(iv)  The events described in this subparagraph B took place between nine a.m.  and five p.m.

(v)  The events described in this subparagraph B took place in Tharp's office, located at the Dallas Office.

(vi)  Summers found Tharp's conduct referenced in this subparagraph B to be unwelcome.

(vii)  A reasonable person would find Tharp's conduct referenced in this subparagraph B to be unwelcome.

C.  During the weekend of July 27, 2018, Tharpe telephoned Summers via the cell phone that ORIX had previously issued to him. Tharp was outside the Dallas Office at the time. The topic of Tharp's phone call to Summers was not work related. Instead, Tharp telephoned Summers because he wanted to talk with Summers about accusations of infidelity being made against him by his infant's night nurse.

**Complaint**                                                                                    **Page 12**

(i)    Summers found Tharp's conduct referenced in this subparagraph C to be unwelcome.

(ii)    A reasonable person would find Tharp's conduct referenced in this subparagraph C to be unwelcome.

D.    On multiple occasions, Tharp texted and telephoned Summers on his ORIX-issued cell phone after ten p.m. and well into the early morning hours. Sometimes, when Tharp telephoned during these afterwork hours, Summers perceived that Tharp was drunk.

(i)    During calendar year 2018 Tharp did this at least twenty times.

(ii)    During calendar year 2019, and while he was still employed by ORIX, Tharp did this at least ten times.

(iii)    Summers found Tharp's conduct referenced in this subparagraph D to be unwelcome.

(iv)    A reasonable person would find Tharp's conduct referenced in this subparagraph D to be unwelcome.

E.    Tharp arranged for an ORIX employee named Ms. Callie Heerwagen to accompany him to a lunch meeting with a potential borrower from an oil and gas company. When Tharp came back to the office, Tharp told Summers that the lunch meeting went well because the potential borrower stayed distracted by Heerwagen's appearance.

(i)    The events described in this subparagraph E took place in October 2017.

(ii)    Summers found Tharp's conduct referenced in this subparagraph E to be unwelcome.

(iii)    A reasonable person would find Tharp's conduct referenced in this

**Complaint**                                                                                          **Page 13**

subparagraph E to be unwelcome.

        F.    Tharp caused a floral arrangement to be delivered to Summers at her office at the Dallas Office. Multiple ORIX employees saw this floral arrangement. Multiple ORIX employees were also made aware that the floral arrangement to Summers came from Tharp. Tharp asked Summers how the floral arrangement compared to items that Summers's husband had given her. Tharp also asked Summers if the floral arrangement had made Summers's husband jealous.

        (i)    The events described in this subparagraph F took place in January 2017.

        (ii)    The events described in this subparagraph F took place during the second half of January 2017.

        (iii)    The events described in this subparagraph F took place on January 27, 2019.

        (iv)    Summers found Tharp's conduct referenced in this subparagraph F to be unwelcome.

        (v)    A reasonable person would find Tharp's conduct referenced in this subparagraph F to be unwelcome.

        G.    After his divorce, Tharp began telling Summers about his dating life. This included telling Summers how many women he was sleeping with at one time.

        (i)    The events described in this subparagraph G took place in Year 2016.

        (ii)    The events described in this subparagraph G took place during the summer of 2016.

        (iii)    Summers found Tharp's conduct referenced in this subparagraph G

**Complaint**                                                                            **Page 14**

to be unwelcome.

   (iv) A reasonable person would find Tharp's conduct referenced in this subparagraph G to be unwelcome.

  H. Tharp made multiple comments about the appearance of other women. This included references to female employees as "fresh meat." This also included comments about the size of these women's breasts, *e.g.*, "big boobs."

   (i) Summers found Tharp's conduct referenced in this subparagraph H to be unwelcome.

   (ii) A reasonable person would find Tharp's conduct referenced in this subparagraph H to be unwelcome.

69. On March 22, 2019, Summers met face-to-face with Lenocker.

70. On March 22, 2019, Summers met face-to-face with Lenocker at the Dallas Office.

71. On March 22, 2019, Summers met face-to-face with Lenocker at the Dallas Office after Tharp had left for the day.

72. On March 22, 2019, Summers met face-to-face with Lenocker at the Dallas Office after Tharp had left for the day, at which time Summers informed Lenocker of Tharp's sexual harassment of her.

73. On March 22, 2019, Summers met face-to-face with Lenocker at the Dallas Office after Tharp had left for the day, at which time Summers informed Lenocker of Tharp's sexual harassment of her, including the following:

  A. Tharp showing Summers two photos of two scantily clothed women.

  B. Tharp sending strawberries and champagne to Summers's hotel room, at night, during a conference away from the Dallas Office.

**Complaint**                           **Page 15**

     C.     Tharp sending an extravagant floral arrangement to Summers.

     D.     Tharp discussing alleged sexual indiscretions by him with his night nanny.

     E.     Tharp's retention of an individual known only to Summers as the "Wolf."

74.     Following the meeting referenced in Paragraph 72 *supra*, Lenocker told Summers that she, *i.e.,* Summers, should look for new employment.

75.     Following the meeting referenced in Paragraph 72 *supra*, Lenocker told Summers, more than once, that she, *i.e.,* Summers, should look for new employment.

76.     On March 22, 2019, and after she met with Lenocker, Summers met face-to-face with Dudley.

77.     On March 22, 2019, and after she met with Lenocker, Summers met face-to-face with Dudley in Dudley's office.

78.     On March 22, 2019, and after she met with Lenocker, Summers met face-to-face with Dudley in Dudley's office after Tharp had left for the day.

79.     On March 22, 2019, and after she met with Lenocker, Summers met face-to-face with Dudley in Dudley's office after Tharp had left for the day, at which time Summers informed Dudley of Tharp's sexual harassment of her.

80.     On March 22, 2019, and after she met with Lenocker, Summers met face-to-face with Dudley in Dudley's office after Tharp had left for the day, at which time Summers informed Dudley of Tharp's sexual harassment of her, including the following:

     A.     Tharp showing Summers two photos of two scantily clothed women.

     B.     Tharp sending strawberries and champagne to Summers's hotel room, at night, during a conference away from the Dallas Office.

     C.     Tharp sending an extravagant floral arrangement to Summers.

**Complaint**     **Page 16**

D.      Tharp discussing alleged sexual indiscretions by him with his night nanny.

E.      Tharp's retention of an individual known only to Summers as the "Wolf."

81.    The sexually charged behavior referenced in Paragraphs 73 and 80 *supra* was not unique to Tharp. Below are two examples/illustrations:

A.      Tharp had a female Analyst travel with him on a business development trip to New York. When Tharp returned to the Dallas Office, Tharp told Summers about Thorp asking him, *i.e.,* Tharp, about whether he had "tapped" the Analyst while the two were out of town. Tharp quoted Thorp as telling him that he would have "tapped" the female Analyst and that it was "a missed opportunity" for Tharp if Tharp had not done this.

(i)     Summers found Tharp's conduct referenced in this subparagraph A to be unwelcome.

(ii)    A reasonable person would find Tharp's conduct referenced in this subparagraph A to be unwelcome.

B.      On more than one occasion, Tharp told Summers about rumors of a female Director from another group within ORIX having an affair with an Executive Committee member. Tharp told Summers he was staying far away from this female Director because she was a dangerous type of woman who could not be trusted as she was not "one of the boys."

(i)     Summers found Tharp's conduct referenced in this subparagraph "B" to be unwelcome.

(ii)    A reasonable person would find Tharp's conduct referenced in this subparagraph "B" to be unwelcome.

82.    In March/April 2019, Summers was the only Director at ORIX who was directly leading a multi-million-dollar business unit.

83.     At no time from January 1, 2019 through April 30, 2019 was ORIX ever aware of Summers suffering from any disability that prevented her from performing any of the essential job duties of a Managing Director for ORIX.

84.     At no time from January 1, 2019 through April 30, 2019 was ORIX ever aware of Summers suffering from the loss of any necessary professional license that would have prevented her from performing any of the essential job duties of a Managing Director for ORIX.

85.     At no time from January 1, 2019 through April 30, 2019 was ORIX ever aware of Summers suffering from any occurrence that rendered her unfit for the job of Managing Director for ORIX.

86.     On October 16, 2019, Summers signed a document from the U.S. Equal Emplyoment Opportunity Commission ("EEOC") titled *Charge of Discrimination*.

    A.     EEOC received this document on October 21, 2019.

    B.     EEOC assigned the following number to this document – 450-2020-00601.

    C.     This document shall hereinafter be referenced as the "First Charge."

87.     Summers tendered a copy of the First Charge to Dudley.

    A.     Summers did this by emailing the First Charge to Dudley.

    B.     Summers emailed the First Charge to Dudley on October 18, 2019.

88.     At no time from October 16, 2019 through December 31, 2019 was ORIX ever aware of Summers suffering from any disability that prevented her from performing any of the essential job duties of a Director of OEC.

89.     At no time from October 16, 2019 through December 31, 2019 was ORIX ever aware of Summers suffering from the loss of any necessary professional license that would have prevented her from performing any of the essential job duties of a Director of OEC.

90.     At no time from October 16, 2019 through December 31, 2019 was ORIX ever aware of Summers suffering from any occurrence that rendered her unfit for the job of a Director of OEC.

91.     ORIX discharged Summers.

92.     ORIX discharged Summers effective December 31, 2019.

93.     It was on December 16, 2019 when ORIX informed Summers that it was discharging her.

94.     During the meeting referenced in Paragraph 93, ORIX verbally informed Summers that it was offering Summers a severance package.

95.     During the meeting referenced in Paragraph 93, ORIX verbally informed Summers that it was offering Summers a severance package, and ORIX also verbally informed Summers of some of the severance package's terms.

96.     During the meeting referenced in Paragarph 93, ORIX verbally informed Summers that it was offering Summers a severance package but added that the actual writing of this severance package was still being drafted by ORIX's Legal Department.

97.     On December 17, 2019, ORIX tendered to Summers a writing, dated December 17, 2019, which set forth the terms of the severance package referenced in Paragraph 95 supra.

98.     The writing described in Paragraph 95 identified a sum that was smaller than the sum that ORIX had previously given to other similarly-situated employees as part of their severance packages.

99.     The writing described in Paragraph 95 identified a sum that was smaller than the sum that ORIX had previously given to an individual named David Walls as part of his severance package.

**Complaint**                                                                                    **Page 19**

  A.  Walls's gender is not female.

  B.  Walls is not Hispanic.

  C.  According to ORIX's records, Walls's gender is not female.

  D.  According to ORIX's records, Walls is not Hispanic.

100. ORIX did not offer or allow Summers to transfer to another group in ORIX.

101. Following the effective date of Summers's discharge from ORIX, ORIX assigned the energy debt portfolio, for which Summers had been responsible during Years 2018 and 2019, to Messrs. Justin Hirsch and Brent Clough.

  A.  Hirsch's gender is not female.

  B.  According to ORIX's records, Hirsch's gender is not female.

  C.  Hirsch is not Hispanic.

  D.  According to ORIX's records, Hirsch is not Hispanic.

  E.  Clough's gender is not female.

  F.  According to ORIX's records, Clough is not Hispanic.

102. Following the effective date Summers's of discharge from ORIX, ORIX allowed Heerwagen, an ORIX employee assigned to OEC, to transfer to another group in ORIX.

  A.  Heerwagen is not Hispanic.

  B.  According to ORIX's records, Heerwagen is not Hispanic.

103. Following the effective date of Summers's discharge from ORIX, ORIX allowed Mr. Eric Schneider, an ORIX employee from OEC, to transfer another group within ORIX.

  A.  Schneider's gender is not female.

  B.  Schneider is not Hispanic.

  C.  According to ORIX's records, Schneider is not female.

      D.      According to ORIX's records, Schneider is not Hispanic.

104.    On January 27, 2020, Summers signed a document from the U.S. Equal Emplyment Opportunity Commission ("EEOC") titled *Charge of Discrimination*.

      A.      EEOC assigned the following number to this document – 450-2020-04043.

      B.      This document shall hereinafter be referenced as the "Second Charge."

      C.      Summers amended the Second Charge.

      D.      Summers amended the Second Charge on April 16, 2020.

105.    On June 25, 2020, Ms. Belinda F. McCallister, the EEOC's District Director, signed a document titled *Notice of Right to Sue (Issued on Request)* with regard to the First Charge.

      A.      Summers has filed this action before the expiration of ninety days from her receipt of this document.

106.    On June 25, 2020, Ms. Belinda F. McCallister, the EEOC's District Director, signed a document titled *Notice of Right to Sue (Issued on Request)* with regard to the Second Charge, as amended.

      A.      Summers has filed this action before the expiration of ninety days from her receipt of this document.

107.    Due to ORIX's conduct, including the foregoing, Summers has suffered economic losses.

      A.      Summers will likely continue to suffer such losses in the future.

108.    Due to ORIX's conduct, including the foregoing, Summers has suffered mental anguish.

      A.      Summers will likely continue to suffer such losses in the future.

**COUNT ONE:**
**Violation of Title VII; Discrimination/Sex Harassment by Supervisor – GENDER**

109.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

110.    Section 703(a) of Title VII states: "*It shall be an unlawful employment practice for an employer ... (1) ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex[.]*" 42 U.S.C. § 2000e-2(a).

111.    The prohibition set forth in paragraph 110 *supra* includes sexual harassment. Quoting the Supreme Court, Summers should not be forced to "***run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living***[.]" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Yet, that is what ORIX forced Summers to do.

112.    ORIX created a hostile work environment in violation of Title VII as follows. ***First***, Summers was a member of a protected class (women). ***Second***, Summers was subjected to unwelcome sexual harassment by her supervisor (Tharp). ***Third***, Tharp's harassment of Summers was based upon Summers's sex or gender. ***Fourth***, Tharp's harassment of Summers was sufficiently severe or pervasive to affect a term, condition or privilege of Summers's employment.

113.    Summers has satisfied all conditions precedent to the filing of Count One.

114.    Summers seeks all relief available to her under Section 703(a)(1) of Title VII. This includes but is not limited to the following: (i) all compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses; (ii) punitive damages, given the fact that ORIX engaged in discriminatory practices with malice or with reckless indifference to Summers's

federally-protected rights; (iii) all permitted equitable relief; (iv) all interest allowed by law, *e.g.,* pre-judgment and post-judgment; (v) a reasonable attorney's fee to the undersigned counsel as part of the costs; (vi) reimbursement of expert fees as part of the undersigned counsel's attorney's fee; and, (vii) all other costs allowed by law.

## COUNT TWO:
## <u>Violation of Title VII; Discrimination – Failure to Promote -- GENDER</u>

115.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

116.    Section 703(a) of Title VII states, "*It shall be an unlawful employment practice for an employer— (1) to … discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex*[.]" 42 U.S.C. § 2000e-2(a).

      A.    ORIX violated the statute quoted in this paragraph when in 2019 it passed over promoting Summers to Managing Director, where a motivating factor in ORIX's decision was Summers's gender (female).

117.    Summers has satisfied all conditions precedent to the filing of Count Two.

118.    Summers seeks all relief that is available to her under Section 703(a) of Title VII. This includes but is not limited to the following categories:

      A.    all wages and employment benefits, starting on the effective date of ORIX's decision not to promote Summers to the position of Managing Director, and ending on the date when a jury renders a verdict ("back pay").

      B.    placement to the position of Managing Director, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum of money that

is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.    compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.    punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.    all permitted equitable relief.

F.    all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.    a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.    reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

I.    all other costs allowed by law.

**COUNT THREE:**
**Violation of Title VII; Discrimination – Failure to Promote**
**RACE – COLOR – NATIONAL ORIGIN**

119.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

120.    Section 703(a) of Title VII states, "*It shall be an unlawful employment practice for an employer— (1) to … discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, … or national origin*[.]" 42 U.S.C. § 2000e-2(a).

A.    ORIX violated the statute quoted in this paragraph when in 2019 it passed over promoting Summers to Managing Director, where a motivating factor in ORIX's decision was the fact that Summers is Hispanic.

121.    Summers has satisfied all conditions precedent to the filing of Count Three.

122.    Summers seeks all relief that is available to her under Section 703(a) of Title VII. This includes but is not limited to the following categories:

A.    all wages and employment benefits, starting on the effective date of ORIX's decision not to promote Summers to the position of Managing Director, and ending on the date when a jury renders a verdict ("back pay").

B.    placement to the position of Managing Director, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.    compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.    punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.    all permitted equitable relief.

F.    all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.    a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.    reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

**Complaint**                                                                                      **Page 25**

I.    all other costs allowed by law.

## COUNT FOUR:
## Violation of Section 1981; Discrimination -- FAILURE TO PROMOTE

123.    Summers re-alleges and incorporates by reference all allegations set forth in

paragraphs 22 through 108.

124.    42 U.S.C. 1981 ("Section 1981") states:

*(a)    Statement of equal rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.*

*(b)    "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

*(c)    Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination...*

A.    ORIX violated Section 1981 when, after having formed a "contract[]" with

Summers as that word is used in subsection (a) *supra*, it failed to promote Summers in 2019 to the

position of Managing Director, where a motivating factor in ORIX's decision was the fact that

Summers is Hispanic.

125.    Summers seeks all relief that is available to him under Section 1981. This includes

but is not limited to the following categories:

A.    all wages and employment benefits, starting on the effective date of ORIX's

decision not to promote Summers to the position of Managing Director, and ending on the date

when a jury renders a verdict ("back pay").

B.    placement to the position of Managing Director, with all wages/benefits

commensurate with that position, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.     compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.     punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.     all permitted equitable relief.

F.     all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.     a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.     reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

I.     all other costs allowed by law.

## COUNT FIVE:
## Violation of Title VII; Retaliation – Failure to Promote

126.     Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

127.     Section 704(a) of Title VII states, "It shall be an unlawful employment practice for an employer— "*It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees … because [the employee] has opposed any practice made an unlawful employment practice by this title*[.]" 42 U.S.C. § 2000e-3(a).

A.      ORIX violated the statute quoted in this paragraph when in 2019 it passed over promoting Summers to Managing Director, where the decision to pass over her for promotion was "because" of the fact that Summers had previously conveyed to at least two different management officials her opposition to what she reasonably perceived was unlawful sexual harassment.

128.    Summers has satisfied all conditions precedent to the filing of Count Five.

129.    Summers seeks all relief that is available to her under Section 704(a) of Title VII. This includes but is not limited to the following categories:

A.      all wages and employment benefits, starting on the effective date of ORIX's decision not to promote Summers to the position of Managing Director, and ending on the date when a jury renders a verdict ("back pay").

B.      placement to the position of Managing Director, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.      compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.      punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.      all permitted equitable relief.

F.      all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.      a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.    reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

I.    all other costs allowed by law.

### COUNT SIX:
### Violation of Title VII; Discrimination – Discharge – GENDER

130.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

131.    Section 703(a) of Title VII states, "*It shall be an unlawful employment practice for an employer— (1) to … discharge any individual, …, because of such individual's … sex*[.]" 42 U.S.C. § 2000e-2(a).

A.    ORIX violated the statute quoted in this paragraph when it discharged Summers effective December 31, 2019, where a motivating factor in the discharge decision was her gender (female).

B.    ORIX also violated the statute quoted in this paragraph when, on December 16, 2019 (verbally), and on December 16, 2019 (in writing), it offered to Summers a severance package, the amount of which was smaller than those offered to other similarly situated individuals who were not female.

132.    Summers has satisfied all conditions precedent to the filing of Count Six.

133.    Summers seeks all relief that is available to her under Section 703(a) of Title VII. This includes but is not limited to the following categories:

A.    all wages and employment benefits, starting on the effective date of Summers's discharge date from her position as Director of OEC, and ending on the date when a jury renders a verdict ("back pay").

B.      reinstatement/placement to the position of Director of OEC, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.      compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.      punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.      all permitted equitable relief.

F.      all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.      a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.      reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

I.      all other costs allowed by law.

**COUNT SEVEN:**
**Violation of Title VII; Discrimination – Discharge**
**RACE-COLOR-NATIONAL ORIGIN**

134.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

135.    Section 703(a) of Title VII states, "*It shall be an unlawful employment practice for an employer— (1) to … discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, … or*

**Complaint**                                                                                         **Page 30**

*national origin*[.]" 42 U.S.C. § 2000e-2(a).

A.    ORIX violated the statute quoted in this paragraph when it discharged Summers effective December 31, 2019, where a motivating factor in the discharge decision was the fact that she is Hispanic.

B.    ORIX also violated the statute quoted in this paragraph when, on December 16, 2019 (verbally), and on December 16, 2019 (in writing), it offered to Summers a severance package, the amount of which was smaller than those offered to other similarly situated individuals who were not Hispanic.

136.    Summers has satisfied all conditions precedent to the filing of Count Seven.

137.    Summers seeks all relief that is available to her under Section 703(a) of Title VII. This includes but is not limited to the following categories:

A.    all wages and employment benefits, starting on the effective date of Summers's discharge date from her position as Director of OEC, and ending on the date when a jury renders a verdict ("back pay").

B.    reinstatement/placement to the position of Director of OEC, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.    compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.    punitive damages, given that ORIX engaged in such discriminatory

practices with malice or with reckless indifference to Summers's federally protected rights.

      E.      all permitted equitable relief.

      F.      all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

      G.      a reasonable attorney's fee to the undersigned counsel as part of the costs.

      H.      reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

      I.      all other costs allowed by law.

**COUNT EIGHT:**
**<u>Violation of Section 1981; Discrimination – Discharge</u>**

138.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

139.    42 U.S.C. 1981 ("Section 1981) reads in pertinent part as follows:

*(a)    **Statement of equal rights.**  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.*

*(b)    **"Make and enforce contracts" defined.**  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

*(c)    **Protection against impairment.**  The rights protected by this section are protected against impairment by nongovernmental discrimination...*

      A.      ORIX violated Section 1981 when, after having formed a "contract[]" with Summers as that word is used in subsection (a) *supra*, it discharged Summers effective December 31, 2019, where a motivating factor in the discharge decision was the fact that she is Hispanic.

      B.      ORIX also violated Section 1981 when, after having formed a "contract[]"

with Summers as that word is used in subsection (a) *supra*, it offered a severance package to Summers – ORIX did this verbally on December 16, 2019, and in writing on December 17, 2019 – the amount of which was smaller than those offered to other similarly situated individuals who were not Hispanic.

140.     Summers seeks all relief that is available to her under Section 1981. This includes but is not limited to the following categories:

A.     all wages and employment benefits, starting on the effective date of Summers's discharge date from her position as Direct of OEC, and ending on the date when a jury renders a verdict ("back pay").

B.     reinstatement/placement to the position of Director of OEC, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.     compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.     punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.     all permitted equitable relief.

F.     all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.     a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.     reimbursement of expert fees as part of the undersigned counsel's attorney's

fee.

I.    all other costs allowed by law.

## COUNT NINE:
### <u>Violation of Title VII; Retaliation – DISCHARGE</u>

141.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

142.    Section 704(a) of Title VII states, "It shall be an unlawful employment practice for an employer— "*It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [the employee] has opposed any practice made an unlawful employment practice by this title*[.]" 42 U.S.C. § 2000e-3(a).

A.    ORIX violated Title VII when it discharged Summers effective December 31, 2019, where the discharge decision was "because" of the fact (i) that Summers had previously conveyed to at least two different management officials her opposition to what she reasonably perceived was unlawful sexual harassment, and (ii) that Summers had previously filed the First Charge with EEOC.

B.    ORIX also violated Title VII when, on December 16, 2019 (verbally), and on December 17, 2019 (in writing), it offered to Summers a severance package, the amount of which was smaller than those offered to other similarly situated individuals who were not female and/or Hispanic.

143.    Summers has satisfied all conditions precedent to the filing of Count Nine.

144.    Summers seeks all relief that is available to her under Section 704(a) of Title VII. This includes but is not limited to the following categories:

A.    all wages and employment benefits, starting on the effective date of

**Complaint**                                                                                                                    **Page 34**

Summers's discharge date from her position as Director of OEC, and ending on the date when a jury renders a verdict ("back pay").

B.    reinstatement/placement to the position of Director of OEC, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.    compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.    punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.    all permitted equitable relief.

F.    all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.    a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.    reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

I.    all other costs allowed by law.

**COUNT TEN:**
**Violation of Section 1981; Retaliation – Discharge**

145.    Summers re-alleges and incorporates by reference all allegations set forth in paragraphs 22 through 108.

146.    42 U.S.C. 1981 ("Section 1981) reads in pertinent part as follows:

**Complaint**                                                                                                    **Page 35**

*(a)    **Statement of equal rights.**  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.*

*(b)    **"Make and enforce contracts" defined.**  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

*(c)    **Protection against impairment.**  The rights protected by this section are protected against impairment by nongovernmental discrimination...*

A.    ORIX violated Section 1981 when it discharged Summers effective December 31, 2019, where the discharge decision was because of the fact, at least in part,  (i) that Summers had previously conveyed to at least two different management officials her opposition to what she reasonably perceived was unlawful sexual harassment, and (ii) that Summers had previously filed the First Charge with EEOC.

B.    ORIX also violated Section 1981 when, on December 16, 2019 (verbally), and on December 17, 2019 (in writing), it offered to Summers a severance package, the amount of which was smaller than those offered to other similarly situated individuals who were not Hispanic.

147.    Summers seeks all relief that is available to her under Section 1981. This includes but is not limited to the following categories:

A.    all wages and employment benefits, starting on the effective date of Summers's discharge date from her position as Director of OEC, and ending on the date when a jury renders a verdict ("back pay").

B.    reinstatement/placement to the position of Director of OEC, with all wages/benefits commensurate with that position, or, if that is found to be inappropriate, then a sum

of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Summers will be made whole ("front pay").

C.    compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

D.    punitive damages, given that ORIX engaged in such discriminatory practices with malice or with reckless indifference to Summers's federally protected rights.

E.    all permitted equitable relief.

F.    all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

G.    a reasonable attorney's fee to the undersigned counsel as part of the costs.

H.    reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

I.    all other costs allowed by law.

**Jury Demand**

148.    Summers demands a jury on all issues so triable. *See* FED. R. CIV. P. 38.

**Request for Relief**

WHEREFORE, Plaintiff Maria Alicia Summers asks that Defendants ORIX USA, LP and ORIX Corporation USA (collectively "ORIX") appear and answer, and that on trial of this action Summers have final judgment against ORIX, joint and several, as set forth hereinabove, and for all such other and further relief to which Summers is justly entitled.

Dated: September 19, 2020

Respectfully submitted,

*s/Wade A. Forsman*

By: _____

**Wade A. Forsman**
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
903.689.4144 Telephone-East Texas
972.499.4004 Telephone–Dallas/Fort Worth
903.689.7001 Facsimile
**wade@forsmanlaw.com**

**Robert J. Wood**
State Bar No. 00788712
WOOD EDWARDS LLP
1700 Pacific Avenue, Suite 2280
Dallas, TX  75201
Phone: 214.382.9789
Email: **robert@mylawteam.com**

**Attorneys for Plaintiff Maria Alicia Summers**